UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN VINER

        Plaintiff,                  CIVIL ACTION NO. 05-CV-72318-DT

  vs.                                DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Justin Viner filed an application for Disability Insurance Benefits ("DIB") on September 10, 2002, alleging disability since June 10, 2002. (Tr. 49, 55). Plaintiff's application was initially denied on December 6, 2002. (Tr. 39). Plaintiff sought review by an ALJ, and was given an administrative hearing before ALJ Alfred Varga on February 7, 2003. (Tr. 179-201). The ALJ denied Plaintiff's claims in a written opinion issued December 10, 2004. (Tr. 22-27). The Appeals Council denied Plaintiff's request for review on April 28, 2005. (Tr. 3-5). The ALJ's written opinion is now the final opinion of the Commissioner. (Tr. 6). *See* 20 C.F.R. § 404.981. Plaintiff

appealed the denial of his claims to this Court, and both parties have filed motions for Summary Judgment.

## MEDICAL HISTORY

Plaintiff was born on November 1, 1980. (Tr. 49). On June 10, 2002, as a result of an all-terrain vehicle accident, Plaintiff suffered a pelvic fracture, a femur fracture, a distal iliac artery injury and inguinal and rectal lacerations. (Tr. 23, 86-117). Plaintiff underwent surgical repair of the pelvic fracture, patch angioplasty to his right iliac artery, and a diverting and sigmoid colostomy. (Tr. 86-87). In July 2002, discharge notes indicated that he had improved significantly with physical therapy and that he was tolerating a regular diet. (Tr. 115-116).

Shivajee V. Nallamothu, D.O. evaluated Plaintiff on August 20, 2002. (Tr. 134-135). At that time, Plaintiff complained of right femur pain. (Tr. 134*).* Dr. Nallamothu noted that the right femur incisions had healed well and that Plaintiff's femur rotation appeared to be excellent. *Id.* Plaintiff also had full range of motion in his right knee. *Id.* Plaintiff had quadriceps atrophy as well as buttock atrophy. *Id.* Plaintiff's neurovascular status was found to be intact; he experienced no sensation loss. *Id.* Dr. Nallamothu recommended continued outpatient physical therapy to strengthen the right leg, and weight bearing to tolerance on the right leg. (Tr. 135).

In September 2002, Plaintiff developed drainage in his right thigh wound. (Tr. 131). Plainitiff had minimal pain in the femur. *Id.* On examination by Dr. Nallamothu, Plaintiff exhibited range of motion in the knee from 90 degrees to full extension. *Id.* X-rays of the femur and pelvis were unremarkable. *Id.* Plaintiff underwent incision and drainage of the thigh wound, and healed without complication. (Tr. 129).

In October 2002, Dr. Nallamothu opined that Plaintiff was doing well and was "happy with the results thus far" from his incision wound. (Tr. 127). Plaintiff's neurovascular status was intact and he experienced no sensation loss but had some stiffness. *Id.* Plaintiff's skin appeared to be healing well. *Id.*

Plaintiff's family practitioner, James Stepanski, D.O., noted in October 2002 that Plaintiff would require more surgery on his abdomen and colostomy and would need to undergo physical therapy. (Tr. 138). Plaintiff was eating and sleeping well and gaining some pain relief from taking Lortab. (Tr. 140). However, Plaintiff also reported experiencing constant pain that was caused by "almost all activities, [lasting] as long as [the] activity." (Tr. 69).

In February 2003, Dr. Nallamothu examined Plaintiff, who complained of some grinding in the back of his kneecap. (Tr. 153). In all other respects Plaintiff was doing well. *Id.* X-rays indicated a healed fracture with a retrograde femoral nail and possible irritation of the retropatellar cartilage. *Id.* Dr. Nallamothu recommended that Plaintiff undergo arthroscopic surgery of the right knee to remove the femoral rod. *Id.*

Plaintiff underwent arthroscopic surgery of the right knee in March 2003 for removal of the femoral rod. (Tr. 155). Following the surgery, Plaintiff continued physical therapy. (Tr. 158). In April 2003, Plaintiff's physical therapist noted increased mobility, improved ability to walk, and slight improvement in functional strength, including an ability to go up/down stairs, though Plaintiff did not feel comfortable in that activity. (Tr. 158, 160). Over several months, Plaintiff's physical therapist observed improvement in the lower extremities, and in Plaintiff's strength and function. (Tr. 160-167). By August 2003, Plaintiff reported improvement in climbing stairs, though still with discomfort. (Tr. 167).

On December 12, 2003 Plaintiff underwent an injection into the S1 joint. (Tr. 169). In January 2004, Plaintiff complained of pain range of 4-7/10 in the pelvis and femur. The Plaintiff's chief complaint was pain and weakness. (Tr. 170). Plaintiff was diagnosed with sacroiliitis and Dr. Nallamothu prescribed a TENS unit. (Tr. 170-171). In February 2004, Plaintiff transferred to a sports rehabilitation facility. (Tr. 173). Patient was noted to be able to sit 10 to 15 minutes with a pain level of 6/10. *Id*.

In May 2004, electromyography (EMG) studies of the upper extremities indicated the presence of bilateral carpal tunnel syndrome. (Tr. 177). EMG studies of the lower extremities revealed acute/chronic right lumbar radiculopathy most likely at S1. *Id.* MRI report of the lumbar spine dated May 26, 2004 was unremarkable. *Id.*

In August 2004, Dr. Todd Best examined Plaintiff. (Tr. 175-178). Dr. Best had seen the Plaintiff on six different visits and treatment dates. (Tr. 175). Plaintiff reported right knee pain when using stairs, pain in both hands, right leg hypersensitivity to cold, numbness on the top of the right anterior thigh and the lateral thigh feels dead. (Tr. 175-176). On examination, Dr. Best observed that Plaintiff had no difficulty sitting, and that he transferred to standing well. (Tr. 176). Plaintiff exhibited a normal gait and was able to walk on his heels and his toes. *Id.* Plaintiff performed 20 heel pumps on the right and 20 on the left. *Id.* Dr. Best noted tenderness on palpation of the right sacroiliac joint and right iliolumbar ligament. *Id.* Plaintiff exhibited no edema or discoloration in the lower extremities. *Id.* Peripheral pulses and capillary blanching are intact. *Id.* Sensitivity to light touch was decreased on the right lateral and anterior thigh, but muscle strength was 4/5 for the right quadriceps. *Id.* Plaintiff demonstrated full functional range of motion at the bilateral shoulders, elbows, wrists, and fingers. (Tr. 177). Dr. Best reported that Plaintiff's

prognosis was poor and opined that Plaintiff had "total permanent disability" and could not work at even a "sedentary" level. (Tr. 178).

## HEARING TESTIMONY

At the administrative hearing, Plaintiff testified that he was still attending physical therapy and continued to use Kadian [morphine sulfate] and Lortab for pain relief. (Tr. 184-185). He testified that the medication causes him to feel drowsy and sleep. (Tr. 185). He also uses a TENS unit and has had nerve blocks and injections that did not provide lasting relief of his symptoms. (Tr. 185-186). Plaintiff testified that he developed carpal tunnel syndrome and has been required to wear wrist braces since June 2004. (Tr. 186-187). Plaintiff estimated that he could stand for 15 minutes, sit for 30 minutes, walk 100 feet and lift 10 pounds. (Tr. 188). Plaintiff uses a cane. *Id.* Plaintiff testified to having severe diarrhea and bowel accidents six days out of every week due to his abdominal and intestinal injuries. (Tr. 190-191). Plaintiff testified that he spends most of his day lying down due to his symptoms. (Tr. 191). Plaintiff rated his pain at 4-7/10 on a typical day. (Tr. 188).

Raymond J. Dulecki, a vocational expert, also testified at the hearing. (Tr. 193-200). The ALJ first asked the vocational expert hypothetical questions regarding a person of Plaintiff's age, sex, educational level, work experience, transferable skills, and the functional limitations Plaintiff described in his hearing testimony. (Tr. 194). When asked whether this hypothetical person would be able to go back and perform the kind of work he did in the past or other kinds of work, the vocational expert said no, citing Plaintiff's testimony that the pain causes him to have to lie down periodically throughout the day, and Plaintiff's claims of severe and regular diarrhea and bowel accidents. (Tr. 194). The ALJ then asked a second hypothetical inquiring into what

kind of jobs, if any, would be available to a person with the Plaintiff's age, sex, educational level, work experience, and transferrable skills, if determined that within 12 month he could have performed a sedentary job, that would have never required him to lift over 10 pounds, where he could have sat or stood at his option, that would have allowed him to alternate the use of his hands and would not have required fine finger dexterity, that would not have been performed at any unprotected heights, required any driving or climbing or work around dangerous or hazardous machinery, as well as being relatively simple and routine in nature, not requiring more than a few steps in a completion of the assigned tasks, that would be low in stress, and also have limited contact with the public, coworkers, and with supervisors. (Tr. 195). The vocational expert testified that there are between 1,200 and 4,000 jobs (depending on limited fine dexterity and the need to limit contact with people) in Southeast Michigan that would fit the parameters of Plaintiff's needs and abilities. *Id.*

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

    (1)    he was not presently engaged in substantial gainful employment; and

    (2)    he suffered from a severe impairment; and

    (3)    the impairment met or was medically equal to a "listed impairment;" or

    (4)    he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a

hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

In this case, the ALJ concluded that Plaintiff retained the functional capacity for sedentary work with the opportunity to alternate between sitting and standing as needed, no work around unprotected heights, no driving, no climbing, no work around hazardous machinery, only simple and routine tasks, a low stress environment, and limited contact with the public, coworkers and supervisors. The ALJ concluded at step five that Plaintiff was not disabled because he retains the functional capacity to perform some work in the regional economy.

Plaintiff argues that the ALJ failed to give proper deference to the opinion and assessment by Dr. Best that Plaintiff was totally disabled and not even capable of performing sedentary work. Plaintiff contends that the ALJ erred additionally when he stated that Dr. Best was not a treating physician because Dr. Best had examined and/or treated Plaintiff on several occasions. The "treating physician rule" requires that an ALJ give complete deference to the well supported statements of treating physicians that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence or conflict with other objective evidence on the record. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Even though the ALJ mistakenly referred to Dr. Best as a non-treating physician, this error was harmless because the ALJ properly assessed Dr. Best's opinion and provided adequate reasons to reject it. As the ALJ noted, the medical evidence indicates restrictions but not an inability to perform all work activity. (Tr. 25). The ALJ then referenced Dr. Best's own chart notes, which indicate that Plaintiff has no difficulty sitting and has a normal gait. *Id.* Dr. Best

also noted that Plaintiff maintains good strength throughout all the extremities which is inconsistent with allegations of disabling pain. *Id.* The ALJ further references the medical assessments by both Dr. Nallamothu and Dr. Stepanski, who treated Plaintiff throughout 2002 and 2003 and whose charts indicate that Plaintiff's fractures had healed well, that the Plaintiff had good strength and range of motion of all the extremities, was neurovascularly intact, and that the Plaintiff improved significantly with physical therapy for functional strength and mobility in the lower extremities. *Id.* Lastly, the ALJ cited the physician from the state disability services who concluded that the Plaintiff was capable of light work. *Id.* Substantial evidence supported the ALJ's decision to discount Dr. Best's opinions.

Plaintiff next argues that the ALJ improperly discounted his allegations of pain. 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p govern an ALJ's credibility determination. They require that the ALJ consider a variety of factors in reaching a credibility determination, including the state of the medical evidence, treatment history, medication history, Plaintiff's daily activities, and any inconsistencies in Plaintiff's own testimony. Plaintiff testified that he continued to undergo many forms of treatment, suffered from regular and severe diarrhea and had to lie down most of the day due to symptoms. (Tr. 190-191). The ALJ carefully considered the objective medical evidence and the record and found that they did not corroborate Plaintiff's testimony regarding the extent of his limitations. (Tr. 24). The ALJ noted that within four months of the accident, Plaintiff reported doing well, and his x-rays reflected healed fractures. *Id.* The x-rays of the right femur and pelvis demonstrated healed fractures. *Id.* The clinical findings consistently noted that Plaintiff was neurovascularly intact and had good range of motion of the lower extremities. *Id.* The physical therapy notes indicate that Plaintiff showed improvement in mobility and strength of the lower

extremities and that Plaintiff was doing better walking and stair climbing by August 2003. *Id.* In August 2004, Plaintiff was noted to have no difficulty with prolonged sitting. *Id.*

The ALJ noted that the evidence does not corroborate Plaintiff's testimony regarding disabling diarrhea. There are several references in the record to Plaintiff doing well and eating well and the ALJ was unable to find any indication or complaint of diarrhea or bowel accidents in the numerous medical evaluations.

The ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence on the record.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be **DENIED**, and Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States*

*District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 6, 2006                     s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

## Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 6, 2006                     s/ Lisa C. Bartlett
                                        Courtroom Deputy